**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BRADLEY WALLACE, | : | |
| | : | |
| Plaintiff, | : | CASE NO.: |
| | : | |
| v. | : | |
| | : | |
| TOWN OF GREENWICH, a Connecticut | : | |
| municipality, GREENWICH BOARD OF | : | |
| EDUCATION, JILL GILDEA, in Her Individual | : | |
| Capacity, ELIZABETH ANN CARABILLO, in | : | |
| Her Individual and Official Capacities, | : | |
| ROBERT A. STACY, in His Individual and | : | |
| Official Capacities, RALPH MAYO, in His | : | |
| Individual and Official Capacities, | : | |
| JOANNA SAVINO, in Her Individual Capacity, | : | |
| BRIAN TIPPETT, in His Individual Capacity, and | : | |
| DANIELLE DAVIS, in Her Individual Capacity, | : | DEMAND FOR TRIAL BY JURY |
| | : | |
| Defendants. | : | DECEMBER 26, 2018 |

**COMPLAINT**

PRELIMINARY STATEMENT

1.      This is an action for damages arising from the deliberate indifference of the Town

of Greenwich, the Greenwich Board of Education, and their administrators to violations of the due

process and equal protection rights of a Greenwich Public Schools teacher.

2.      Plaintiff Bradley Wallace is a teacher employed by the Greenwich Public Schools

who was placed on paid administrative leave by Human Resources Director Robert A. Stacy on

March 30, 2017, returned to the classroom April 17-18, 2017, after spring vacation, and placed

again on paid administrative leave on April 19, 2017, until the end of the school year as a result of

false reports and a compromised investigation that (a) deviated from the stated policies and

procedures of the Greenwich Public Schools and (b) rushed to judgments of discipline against

Wallace on April 11, 2017, and May 12, 2017, and August 3, 2017, only to be rescinded by the Greenwich Public Schools on September 26, 2017.

3.    Greenwich Public Schools Superintendent Jill Gildea, Assistant Superintendent Elizabeth Ann Carabillo, Human Resources Director Robert A. Stacy, Eastern Middle School Principal Ralph Mayo, and Eastern Middle School Assistant Principal Joanna Savino jointly and severally determined disciplinary action against Wallace months prior to the July 20, 2017, pre-disciplinary (*Loudermill*) hearing, conveyed false information to the Department of Children and Families about Wallace, failed to conduct an internal Greenwich Public Schools investigation in accordance with written policies and procedures, all which damaged Wallace's professional reputation and caused him financial, reputational, and emotional distress.

## JURISDICTION

4.    This district court has original jurisdiction over Wallace's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 42 U.S.C. §§ 1983, 1988.

5.    This district court has supplemental jurisdiction over Wallace's state law tort claims pursuant to 28 U.S.C. § 1367 as they are sufficiently related to the claims in this action over which the court has original jurisdiction.

6.    Venue is proper in this district as all or nearly all the individual parties reside or work in this district and the events giving rise to the claims asserted herein occurred within this district.

## PARTIES

7.    Plaintiff Bradley Wallace ("Wallace") is an adult resident of Connecticut employed by the Greenwich Board of Education and licensed to teach pursuant to sections 10-144$o$(7) and 10-145b of the Connecticut General Statutes.

8.      Defendant Town of Greenwich ("Greenwich") is a Connecticut municipality as defined and described in section 7-148 of the Connecticut General Statutes.

9.      Defendant Greenwich Board of Education ("GBOE") maintains control of the Greenwich Public Schools under the authority of section 10-240 of the Connecticut General Statutes.

10.     Defendant Jill Gildea ("Superintendent Gildea") was the Superintendent of the Greenwich Public Schools and served as the chief executive officer of the GBOE under the authority of section 10-157(a) of the Connecticut General Statutes from March 2017 until her resignation in May 2018 during a three-year contractual term that was to end June 30, 2020. Superintendent Gildea transitioned into the day-to-day operations of the GBOE Superintendent replacing Interim Superintendent Sal Corda at the end of the 2016-2017 school year. Superintendent Gildea is sued in her individual capacity.

11.     Defendant Elizabeth Ann Carabillo ("Assistant Superintendent Carabillo") is and was the Assistant Superintendent for the Greenwich Public Schools during the period relevant to the allegations in the Complaint and is sued in her individual and official capacities.

12.     Defendant Robert A. Stacy ("HR Director Stacy") is and was the Director of Human Resources for the Greenwich Public Schools during the period relevant to the allegations in the Complaint and is sued in his individual and official capacities.

13.     Defendant Ralph Mayo ("Principal Mayo") was the Principal of Eastern Middle School, a public middle school in Greenwich where Wallace taught 8th grade math during the period relevant to the allegations in the Complaint and is sued in his individual and official capacities. Principal Mayo became the Interim Superintendent when Superintendent Gildea resigned and departed.

3

14. Joanna Savino ("Assistant Principal Savino") is and was the Assistant Principal of Eastern Middle School, a public middle school in Greenwich, during the period relevant to the allegations in the Complaint and is sued in her individual capacity.

15. Brian Tippett ("DCF Investigator Tippett") is an investigator employed by the Department of Children and Families who investigated allegations of emotional abuse against Wallace that were later unilaterally reversed by DCF one-day prior to an administrative hearing. DCF Investigator Tippett is sued in his individual capacity.

16. Danielle Davis ("DCF Supervisor Davis") is a supervisor employed by the Department of Children and Families who substantiated emotional abuse charges against Wallace pertaining to two Greenwich Public School students, Student A and Student B, that were later unilaterally reversed by DCF one-day prior to an administrative hearing. DCF Supervisor Davis is sued in her individual capacity.

17. During the period relevant to the allegations in this Complaint the individual Defendants acted under color of state law.

ALLEGATIONS OF FACT

A. **Paid Administrative Leaves**

18. In a letter from HR Director Stacy dated March 30, 2017, Wallace was provided notice:

> Please be advised that you are being placed on paid administrative leave, without prejudice, effective March 31, 2017, from all professional duties with the Greenwich Public Schools. … This administrative leave will continue pending the outcome of an investigation into allegations that have been made.

4

19. In a letter from HR Director Stacy dated April 10, 2017, Wallace was provided notice:

> The purpose of this letter is to advise you that we will be returning you to work effective Monday, April 17, 2017. DCF has determined that they are not going to take the case. Mr. Ralph Mayo will follow-up with you with the appropriate discipline at the school level.

20. Assistant Superintendent Carabillo emailed HR Director Stacy on April 11, 2017, at 10:23 am attaching a Word file named "Reprimand."

21. Wallace, despite four requests dated August 21, 2017, September 11 and 22, 2017, and November 6, 2017, has never received a copy of the Word file named "Reprimand" attached to the April 11, 2017, 10:23 am email from Assistant Superintendent Carabillo to HR Director Stacy.

22. In response to the April 11, 2017, 10:23 am email from Assistant Superintendent Carabillo, HR Director Stacy wrote:

> I'll take a look, but Ralph will still need to meet with him; talk to some other students; and finalize an Investigation before he issues the reprimand. This guy is such that he told Ralph today when Ralph called him to let him know to be back to work Monday that he was done with the union and was going to bring his own lawyer. Thanks for the help. I will work with guiding Ralph because of the lawyer statement.

23. Assistant Superintendent Carabillo responded in an email to HR Director Stacy on April 11, 2018, at 12:36 pm:

> Well, my Investigation is finished. Ralph sat with me during the interviews with the students ...... he can get a lawyer ....... ! know Ralph has to speak with him I believe Ralph has plenty if [sic] information from his previous conversations with Brad. So, you will send Ralph something?

24. Following the spring break week of April 10-14, 2017, Wallace returned to the classroom at Eastern Middle School on Monday, April 17, 2017.

25. To Wallace's distress, Assistant Superintendent Carabillo, HR Director Stacy, and Principal Mayo failed to inform him that the two students at issue in the DCF investigation who had allegedly suffered emotional abuse had not been transferred from Wallace's class.

26. Assistant Superintendent Carabillo, HR Director Stacy, and Principal Mayo did not make any provisions or plan for Wallace's return to the classroom after paid administrative leave to address questions and the veil of suspicion that students, teachers, staff, and parents held about his absence.

27. One of the students ("Student A") was present in the class on Monday, April 17, 2017, and the other student ("Student B"), who happened to be absent on Monday, April 17, 2017, was present in the class on Tuesday, April 18, 2017.

28. Student A was not in Wallace's class on Tuesday, April 18, 2018.

29. Wallace used an excused absence on Wednesday, April 19, 2017, rather than return to the classroom where no directives, guidance, or information had been provided him regarding the status of Students A and B or for his return to the classroom.

30. In a letter from Assistant Superintendent Carabillo dated April 19, 2017, Wallace was provided notice:

> Please be advised that you are being placed on paid administrative leave, without prejudice, effective April 19, 2017, from all professional duties with the Greenwich Public Schools. … This administrative leave will continue pending the outcome of an investigation into allegations that have been made.

**B.    March 29, 2017, Report to DCF**

31. One day prior to the March 30, 2017, letter from HR Director Stacy notifying Wallace that he was placed on paid administrative leave, Student B's mother made a report to Assistant Principal Savino that Wallace had called Student B "retarded" during class.

32.     Student B's mother reported to Assistant Principal Savino that (a) parents from the class had contacted her to report the incident and (b) Student B's mother confirmed with Student B that Wallace had called him "retarded" during class.

33.     Assistant Principal Savino reported Student B's mother's complaint to the Department of Children and Families (DCF) on March 29, 2017.

34.     Assistant Principal Savino also reported to DCF that Wallace "has a history of making sarcastic inappropriate comments to students" even though Wallace's personnel record indicates no history of sarcastic inappropriate comments or any inappropriate conduct at all.

35.     Student B's mother's complaint proved to be unequivocally false and was denied by Wallace when Wallace was questioned by DCF on April 6, 2017, and was denied on April 19, 2017, by Student B when the student was interviewed by DCF.

36.     DCF attempted to call Student B's mother on March 30, 2017, April 4, 2017, and April 11, 2017, with no success.

37.     A letter from HR Director Stacy was generated to Wallace on April 10, 2017, informing Wallace that he would be returning to work on April 17, 2017.

38.     Student B's mother called DCF on April 13, 2017, questioning why Wallace was returning to work.

39.     When Student B returned to the classroom on Tuesday, April 18, 2017, after his absence on Monday, April 17, 2018, a call from Student B's mother to the GBOE asking why Wallace was back in the classroom resulted in a second-round of paid administrative leave for Wallace commencing on April 19, 2017.

40.     DCF interviewed Student B on Wednesday, April 19, 2017, and learned from Student B that Wallace had never called Student B "retarded."

41.  Credibility issues core to the GBOE and DCF investigation were disregarded to allow for the GBOE's deference to Student B's mother even though her report to Assistant Principal Savino on March 29, 2017, proved to be false when DCF interviewed Student B on April 19, 2017, and no one corroborated that "parents" had contacted Student B's mother to report the incident of Wallace calling Student B a name.

42.  DCF Investigator Tippett, Assistant Superintendent Carabillo, Assistant Principal Savino, Principal Mayo or any other DCF or GBOE representative never asked Student B if he had in fact told his mother that Wallace had called him "retarded."

43.  The GBOE and DCF investigations never determined whether Student B's mother falsely stated to Assistant Principal Savino that her child had told her that Wallace called Student B "retarded," whether Student B's mother falsely stated that other parents had contacted her about Wallace's conduct toward Student B during class, whether Assistant Superintendent Savino concocted the allegation that Wallace called Student B "retarded," whether Student B made a false statement to his mother, or whether another event occurred to explain the disconnect between what was reported to DCF on March 29, 2017, and Student B's statement to DCF Investigator Tippett on April 19, 2017, that Wallace had never called him "retarded."

44.  The GBOE's failure to investigate according to GPS Procedure L-020.22, *Investigation Procedure-Employees*, of Policy L-020, *Professional Personnel Practices*, the genesis of the complaint reported by Student B's mother on March 29, 2017, and all the aspects of the case left Wallace's reputation tainted by two administrative leaves, the first lasting only days and the second lasting through the end of the 2016-2017 school year.

**C.**    **<u>Student B's Mother Never Investigated for False, Uncorroborated Allegations</u>**

45.    Student B's mother contacted DCF on April 13, 2017, after she heard that Wallace was returning to the classroom on April 17, 2017.

46.    After DCF reported the case closed to the Greenwich Public Schools and Wallace returned to work on April 17, 2017, Student B's mother contacted DCF on April 18, 2017, to report that another parent wished to have her child interviewed about Wallace.

47.    Student B's mother, who had commenced the investigation by falsely accusing Wallace of calling Student B "retarded," provided DCF Investigator Tippett the name of Student A on April 19, 2017, whom DCF Investigator Tippett interviewed regarding allegations of a "sarcastic" comment directed toward Student A by Wallace.

48.    Without ever re-interviewing Wallace about Student A or providing Wallace an opportunity to respond to Student A's interview comments from April 19, 2017, DCF Investigator Tippett and DCF Supervisor Davis substantiated findings of emotional abuse against Wallace for comments to Student A and Student B.

49.    DCF informed a GBOE administrator on April 18, 2017, and Assistant Superintendent Carabillo notified Wallace, in an unprecedented action, that Wallace was suspended, again, on paid administrative leave effective April 19, 2017.

**D.**    **DCF Substantiation Findings**

50.    Wallace and his Connecticut Education Association (CEA) representative Ed Thibodeau met with Assistant Superintendent Carabillo on April 27, 2017, to unequivocally deny the allegation that Wallace had called a student "retarded."

51.    Assistant Superintendent Carabillo never asked Wallace about Student A.

52.    Despite four requests on August 21, 2017, September 11 and 22, 2017, and November 6, 2017, Wallace has never seen any investigation report generated by the GBOE's investigation mandated by GPS Policy L-020, Procedure L-020.22.

53.    Assistant Superintendent Carabillo told DCF on April 27, 2017, that Wallace would receive a written reprimand, and on April 28, 2017, she told DCF that a letter would be placed in Wallace's file and perhaps further disciplinary action taken.

54.    Assistant Superintendent Carabillo told DCF on May 12, 2017, that Wallace would be suspended without pay as discipline.

55.    DCF Supervisor Davis substantiated findings of emotional abuse against Wallace on May 17, 2017, without having provided Wallace an opportunity to respond to Student A and despite the evidence that Student B's mother had made false claims against Wallace.

### E.    GBOE Discipline

56.    A pre-disciplinary (*Loudermill*) hearing was held on July 20, 2017, attended by HR Director Stacy, Greenwich Education Association (GEA) President Carol Sutton, CEA UniServ representative Ed Thibodeau, and Wallace.

57.    Wallace did not have records or information to defend himself at the July 20, 2017, hearing including the Word file attached to Assistant Superintendent Carabillo's April 11, 2017, email and the report generated by the GBOE's investigation mandated by GPS Policy L-020, Procedure L-020.22.

58.    In an August 3, 2017, letter ("Suspension Letter") from HR Director Stacy, Wallace was informed of a 5-day unpaid disciplinary suspension (as Assistant Superintendent Carabillo had pre-determined as early as May 12, 2017, before the DCF investigation had concluded).

59.    The Suspension Letter ambiguously referenced "other incidents" that had never been brought to Wallace's attention during his bi-annual meetings with Principal Mayo and performance evaluations that rated him as outstanding:

> It is unfortunate and inappropriate that you continue to exhibit a pattern of negative interactions with students. This is not the first time these issues have been raised with you by your school administration. Your inappropriate behavior with students created a concern with parents, school administration and the Superintendent. Your inappropriate behavior was not in the best interest of our school community.

60.    Despite three separate requests on September 11 and 22, 2017, and November 6, 2017, Wallace never received any documents of the conduct referenced by HR Director Stacy in the Suspension Letter.

61.    The false statements in the Suspension Letter referencing a history of concerns about Wallace's "interactions with students," uncorroborated in Wallace's employment records or in any manner, were an attempt by Superintendent Gildea, Assistant Superintendent Carabillo, HR Director Stacy, Principal  Mayo, and Assistant Principal Savino to justify a suspension based on discredited parent complaints and the demands of one parent in particular, Student B's mother, to placate a disgruntled parent whom the GBOE feared to the extent that no one dared ask questions about the allegations Student B's mother had made against Wallace after the allegations had been discredited.

**F.    The July 20, 2017, *Loudermill* Hearing**

62.    Wallace was not aware on July 20, 2017, at the *Loudermill* hearing that Assistant Superintendent Carabillo, Principal Mayo, and Assistant Principal Savino had falsely informed DCF that Wallace had "a pattern of negative interactions with students."

11

63.     The issue of negative interactions with students had never been raised with Wallace by school administrators, reported to DCF prior to March 29, 2017, or recorded in Wallace's personnel records.

64.     Wallace never had an opportunity to respond to the false allegations made by Assistant Superintendent Carabillo, Principal Mayo, and Assistant Principal Savino that he had "a pattern of negative interactions with students" which he would have unequivocally denied as he did the false allegation made by Student B that he had called Student B "retarded."

65.     In an August 21, 2017, letter from his counsel to the GBOE, Wallace informed the Board:

> In advance of the hearing/meeting before the Board I require all records including correspondence and reports related to the independent investigation conducted by the Greenwich Public Schools into allegations relied upon for the conclusions and disciplinary action described in the August 3, 2017, letter from Director of Human Resources Robert H. Stacy, Esq., SPHR to Mr. Wallace.

66.     Despite three additional separate requests on September 11 and 22, 2017, and November 6, 2017, Wallace never received any documentation supporting the statement in the Suspension Letter that Wallace had "a history of negative interactions with students."

**G.      Post-Paid Administrative Leave, Withdrawal of 5-Day Suspension, and Reversal of DCF Substantiation Findings**

67.     Wallace returned from paid administrative leave at the beginning of the 2017-18 school year with an installment schedule of deductions from his pay for the 5-day disciplinary suspension.

68.     Wallace grieved the 5-day suspension.

69.     Wallace attended a meeting with CEA UniServ representative Ed Thibodeau on September 11, 2017, conducted by HR Director Stacy as a combined Informal/Level One grievance hearing.

70.     Wallace submitted his initial written request at the September 11, 2017, meeting to HR Director Stacy for information related to the independent investigation conducted by the Greenwich Public Schools into allegations relied upon for the conclusions and disciplinary action described in the Suspension Letter.

71.     Wallace received five installments of records on a rolling basis (with the expectation of additional installments) from HR Director Stacy on December 21, 2017 (68 pages), December 28, 2017 (119 pages), January 5, 2018 (29 pages), March 16, 2018 (45 pages), and March 27, 2018 (80 pages).

72.     The 341 pages of documents, documents that Wallace has yet to receive, and the lack of documents supporting the Suspension Letter statement that Wallace had "a pattern of negative interactions with students" would have assisted Wallace in defending himself at the July 20, 2017, pre-disciplinary (*Loudermill*) hearing.

73.     In a September 22, 2017, letter from his counsel to the GBOE's counsel, Wallace informed the Board:

> You also stated in your September 5th letter Mr. Wallace is not entitled to private representation at the informal and Level One hearings. Based on this the Town denied Mr. Wallace the records I requested on his behalf in my August 21st letter described as 'all records including correspondence and reports related to the independent investigation conducted by the Greenwich Public Schools into allegations relied upon for the conclusions and disciplinary action described in the August 3, 2017, letter from Director of Human Resources Robert H. Stacy, Esq., SPHR to Mr. Wallace.' The unavailability of these records at the Informal/Level One hearing violated Mr. Wallace's due process rights and the CBA which provides in Article 14, Section F(6)(b) that the parties agree

13

to make available to each other all data not privileged under law which is in their possession and control and which bears on the issue raised by the grievance. The Town violated this contractual provision.

74.    HR Director Stacy issued a Memorandum dated September 26, 2017, to Superintendent Gildea with the findings and conclusion of the September 11, 2017, combined Informal/Level One grievance hearing:

> As the Level 1 Hearing Officer, I conclude that as a result of procedural issues that I am granting the Grievance and the remedy requested, which is to withdraw the disciplinary action. The District investigation, in part, relied on the DCF investigation. Mr. Wallace is appealing the DCF findings, and as such, the factual underpinnings of the discipline imposed are not yet finalized. The official letter of discipline will be expunged. Any copies of the letter of discipline will be recovered and expunged as well. Mr. Wallace will be made whole for the portion of the unpaid discipline previously imposed. His leave record will reflect that he was on administrative leave with pay, and will delete the reference to a disciplinary suspension.

75.    The DCF investigation relied on and was compromised by the false reports made by Student B's mother, Assistant Superintendent Carabillo, Principal Mayo, and Assistant Principal Savino.

76.    DCF notified Wallace on October 15, 2018, of the cancellation of the substantiation hearing scheduled for October 16, 2018, and the reversal of the DCF findings.

**H.    Disparate Treatment**

77.    In a May 17, 2017, email, Interim Superintendent Corda informed HR Director Stacy, in response to a question from HR Director Stacy about Wallace's status, that a teacher on paid administrative leave pending resolution of a DCF matter especially concerning the welfare of students would not be allowed on district property as an utmost caution to avoid any contact between the teacher and students.

78.    In one application of this policy, a teacher on paid administrative leave pending an investigation was prohibited from attending a May 2, 2017, awards ceremony at Greenwich High School as a past award recipient.

79.    Superintendent Gildea, Assistant Superintendent Carabillo, Principal Mayo, and Assistant Principal Savino knew that Wallace had not engaged in emotional abuse when they called him back to work on April 17, 2017, without any effort to remove Student A or Student B from his class.

80.    Only when a demanding parent called DCF and the GBOE did Superintendent Gildea and Assistant Superintendent Carabillo re-suspend Wallace to placate a demanding parent rather than taking the correct course of action by supporting a teacher against a parent who made false allegations and once those allegations were shown to be false involved a second parent to bolster her demands.

81.    The justification for allowing Wallace to return to work as stated in the September 26, 2017, Memorandum and for rescinding his -day suspension was a pretext to avoid further scrutiny at the Level 2-4 Grievance procedures of the due process denied Wallace since March 29, 2017, which continues to cause him harm.

82.    The disciplinary actions taken against Wallace by the Greenwich Public Schools were rescinded on September 26, 2017, however the consequences of the misleading and false information provided to DCF by the GBOE continue to negatively impact Wallace's personal life and professional reputation.

83.    Wallace was compelled to challenge DCF's substantiation findings in an administrative matter that would not have been set in motion had (a) Superintendent Gildea, Assistant Superintendent Carabillo, Principal Mayo, and Assistant Principal Savino followed the

Greenwich Public Schools written Professional Personnel Practices Policy and Investigation Procedures; (b) Superintendent Gildea, Assistant Superintendent Carabillo, Principal Mayo, Assistant Principal Savino, DCF Supervisor Davis, and DCF Investigator Tippett confronted Student B's mother's credibility issues that became apparent once Student B was interviewed; and (c) Assistant Superintendent Carabillo not arrived at a pre-determined course of disciplinary action that was conveyed to DCF before any investigation concluded.

## VIOLATIONS AND CLAIMS

### COUNT ONE
Fourteenth Amendment to the United States Constitution
Denial of Procedural Due Process, 42 U.S.C. § 1983
Against All Defendants

84. Paragraphs 1 through 83, above, are hereby incorporated as part and in support of Count One.

85. Plaintiff possesses a constitutionally protected interest in his employment and license to teach.

86. Defendants charged Plaintiff with conduct that seriously damaged his standing and associations in his community without a reasonable opportunity to be heard and to defend himself against allegations related to his employment and license.

87. Plaintiff's financial damages, harm to his professional reputation, and emotional distress arise from the Defendant's constitutional violations.

### COUNT TWO
Fourteenth Amendment to the United States Constitution
Denial of Equal Protection, 42 U.S.C. § 1983
Against All Defendants

88. Paragraphs 1 through 83, above, are hereby incorporated as part and in support of Count Two.

89.     The equal protection clause requires that the government treat all similarly situated people alike.

90.     Plaintiff was treated differently than other teachers similarly situated because of the higher deference paid to parents of students who attend a subpopulation of Greenwich schools compared to the other Greenwich schools.

91.     The length of leave and the extent of an investigation related to a complaint about a teacher varies directly based on the socioeconomic status of the parent making the complaint.

92.     The denial of Plaintiff's due process rights arose from the lack of equal protection afforded him as a teacher at a school in the subpopulation where higher deference is paid to parents making complaints.

93.     Plaintiff's financial damages, harm to his professional reputation, and emotional distress arise from the Defendant's constitutional violations.

**COUNT THREE**
Negligent Infliction of Emotional Distress
State Law Tort Claim
Against HR Director Stacy, Assistant Superintendent Carabillo, Principal Mayo, and Assistant
Principal Savino

94.     Paragraphs 1 through 83, above, are hereby incorporated as part and in support of Count Three.

95.     Defendants' conduct created and continues to create an unreasonable risk of causing Plaintiff emotional distress.

96.     Plaintiff's distress was foreseeable.

97.     The emotional distress is severe enough that it might result in illness.

98.     Defendants' conduct is the cause of the Plaintiff's distress.

## COUNT FOUR
Defamation
State Law Tort Claim
Against HR Director Stacy and Principal Mayo

99.     Paragraphs 1 through 83, above, are hereby incorporated as part and in support of Count Four.

100.    To bolster the discredited reports of Student B's mother and her fallback referral to Student A for corroboration of Student B's mother's false allegations against Plaintiff, HR Director Stacy created a document on August 3, 2017, that was placed in Wallace's personnel file and distributed to Superintendent Gildea, Assistant Superintendent Carabillo, Principal Mayo, Assistant Principal Savino, GEA President Carolyn Sutton, CEA UniServ representative Ed Thibodeau, and Maria Bocchino which contained untrue and false statements defaming Plaintiff's professional and personal reputations.

101.    Specifically, HR Director Stacy stated in the Suspension Letter:

> Your actions in this matter are clearly not in compliance with any of these sections of the Code. It is unfortunate and inappropriate that you continue to exhibit a pattern of negative interactions with students. This is not the first time these issues have been raised with you by your school administration. Your inappropriate behavior with students created a concern with parents, school administration and the Superintendent. Your inappropriate behavior was not in the best interest of our school community.

102.    The Suspension Letter statements set forth in paragraph 101, above, were false and maliciously written with knowledge that they were not true.

103.    HR Director Stacy relied on Principal Mayo, who performed Plaintiff's performance evaluations, for the false information in the Suspension Letter.

104.    Plaintiff's financial damages, harm to his professional reputation, and emotional distress arise from Defendants' defamatory statements.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

    A.  Compensatory damages;

    B.  Punitive damages;

    C.  Attorney's Fees and Costs; and

    D.  Such other relief as the claims merit.

PLAINTIFF
BRADLEY WALLACE

BY: _____

Rachel M. Baird (ct12131)
Attorney Rachel M. Baird
15 Burlington Road
Harwinton, CT 06791
Tel: (860) 605-9340
Fax: (860) 605-9342
Email: rbaird@rachelbairdlaw.com

19